**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE COLON,** | : | |
| | : | |
| **Petitioner,** | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | **NO. 06-2263** |
| | : | |
| **DAVID DIGUGLIELMO et al,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OPINION**

Tucker, C. J.                                                                    June 24, 2014

This matter is before the Court on a *pro se* Motion to Vacate Order Denying Habeas

Corpus Relief filed by Petitioner Jose Colon ("Colon" or "Petitioner") pursuant to Federal Rule

of Civil Procedure 60(b). The instant Rule 60(b) motion comes after Colon's Petition for Writ of

Habeas Corpus was dismissed as untimely on May 9, 2007.  For the reasons explained herein,

Colon's Rule 60(b) motion will be denied.

## I.        RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  State Court Proceedings

On June 20, 1989, a jury found Petitioner Jose Colon guilty of second-degree murder,

arson, criminal conspiracy, and risking a catastrophe in connection with the death of Martha

Rosario.  That same day, Colon was sentenced to life imprisonment for the murder conviction,

---

[1] This factual background is taken from Magistrate Judge M. Faith Angell's Report and Recommendation recommending denial of Colon's federal habeas petition. Colon v. DiGuglielmo, CIV.A. 06-2263, 2007 WL 1377651 (E.D. Pa. May 9, 2007).  The Court refers to the more specific citations contained therein.

and lesser concurrent terms for criminal conspiracy and risking a catastrophe.  The underlying

facts, as described by the Post Conviction Relief Act ("PCRA") Court, are as follows:

> On April 13, 1988, Robert Rosser and his friend known as "Herbie" were sitting in a parked car on W. Russell Street in Philadelphia, waiting to deliver a package of cocaine to Paula Jones, a woman who lived in the vicinity. Rosser and Herbie were members of a drug ring headed by [Petitioner] Jose Colon and his co-defendant Luis Montilla. Rosser spotted a police cruiser, and Herbie threw the package of cocaine under Rosser's car. The police did not accost Rosser and Herbie, but before Herbie could exit the car and retrieve the cocaine, a man named Enrique Doheny exited a row-home at 716 W. Russell Street and snatched the cocaine from under the car. The arrival of the police cruiser was fortuitous for Doheny, who had been laying in wait to rob Rosser.
>
> Doheny refused to return the cocaine to Rosser and Herbie. He claimed that Montilla owed him money and told Rosser that if Montilla wanted his cocaine back, Montilla would have to meet him at a nearby motel room. Montilla arrived on the scene and became enraged. He threatened to burn Doheny's house down.
>
> Later that evening, Doheny was waiting for Montilla at the motel room he had specified to Rosser earlier. Montilla and [Petitioner] elected not to confront Doheny directly. Instead, they went to 716 W. Russell Street. [Petitioner] crept to an open window of the residence and poured gasoline inside. Montilla lit a match and ignited the gasoline. The home quickly caught fire. Martha Rosario, who had been living at the residence for two weeks, was overcome by smoke inhalation. Her charred corpse was discovered the next day by investigators near a window from which she had attempted to escape the fire.

Colon appealed his conviction to the Pennsylvania Superior Court, raising claims of

ineffective assistance of counsel, insufficiency of the evidence, prosecutorial misconduct, and

error on behalf of the trial court. The Superior Court affirmed his conviction on January 9, 1992.

Colon did not appeal to the Pennsylvania Supreme Court.

On November 24, 1992, Colon filed a *pro se* petition for collateral relief under the Post

Conviction Hearing Act ("PCHA") in which he raised several issues of ineffective assistance of

trial and appellate counsel.  Subsequently, Colon's PCHA counsel filed a "no merit" letter

indicating that the issues Colon raised were without arguable merit and requested permission to

withdraw. On July 9, 1993, the court dismissed Colon's PCHA petition and granted counsel's request to withdraw.

On January 26, 1994, Colon filed an "Application for Relief" requesting reinstatement of his right to appeal the 1993 dismissal of his first PCHA petition *nunc pro tunc*.  Permission to appeal *nunc pro tunc* was granted on February 10, 1994.  On appeal, Colon raised two issues:

(1) His constitutional rights were violated by the solicitation and presentation of perjured testimony, and

(2) Petitioner received ineffective assistance of counsel at all stages of the proceedings in this matter.

The Superior Court affirmed the denial of relief on September 8, 1995, concluding that Colon's first claim on appeal was waived and that his second claim was meritless. Colon sought discretionary review in the Pennsylvania Supreme Court, which was denied on May 23, 1996.

On June 5, 1997, Mr. Colon filed a second petition for collateral relief under the Post Conviction Relief Act ("PCRA").  The PCRA Court dismissed the petition as untimely pursuant to the one-year limitations period under 42 Pa.C.S.A. §9545(b). Colon did not appeal.  Colon subsequently filed three more PCRA petitions, all of which were dismissed as untimely.

Petitioner appealed the dismissal of his fifth PCRA petition. On appeal, he raised two issues:

(1) "Is the petitioner being denied access to the Court, in violation of Article 1 §11, in conjunction with Article 1 §§20, 25, and Article 5 §9, of the Pennsylvania Constitution because the PCRA does not provide a remedy when a PCRA counsel's actions and/or omissions amount to ineffectiveness, as meaningful representation by counsel [Article 1 §9] is necessary to enforce our constitutional mandate [Article 1 §14] that the privilege of the writ of habeas corpus shall not be suspended?", and

(2) "Does the newly discovered video training tape of Jack McMahon, a former prosecuting attorney for the Commonwealth of Pennsylvania, describing the unconstitutional use of peremptory strikes to exclude a recognized class(es) of Americans from jury duty, that was summoned during the petitioner's case, warrant a reversal and new trial in the instant [case] because the petitioner was

denied a jury trial of his peers consisting of a fair cross section of the city and the neighborhood?"

The Superior Court affirmed, adopting the PCRA Court's opinion as "fully dispositive of the issues raised" on appeal.  Colon requested discretionary review in the Pennsylvania Supreme Court on November 29, 2005. The court denied *allocatur* on May 1, 2006.

**B.  Federal Proceedings**

On May 25, 2006, Colon signed and dated a *pro se* petition for federal habeas relief, which was filed with this Court on May 30, 2006.  Colon raised two grounds for review:

(1)     "Petitioner is being denied access to the courts in violation of his Constitutional rights because the PCRA does not provide a remedy for ineffective assistance of PCRA counsel," and

(2)     "Newly discovered evidence, in the form of a training video of Jack McMahon, a former Pennsylvania prosecuting attorney, describing the unconstitutional use of peremptory strikes to exclude African-American jurors, warrants reversal of his conviction and a new trial because it demonstrates that Petitioner was denied a jury trial consisting of a fair cross section of his community."

Colon argued that the one year habeas statute of limitations should not begin running until April 1997 — when he discovered the existence of the McMahon tape.  Colon further alleged that the one year statute of limitations should be equitably tolled for the intervening nine years due to the ineffectiveness of his PCRA attorney.

One April 19, 2007, Magistrate Judge M. Faith Angell issued a Report and Recommendation concluding that Colon's habeas petition should be dismissed as untimely filed and that Colon had failed to set forth sufficient evidence to support an argument for equitable tolling or statutory tolling.  As Magistrate Judge Angell explained, Colon's proposed start date of April 1997 was of no use because Colon's federal habeas petition was still filed seven years after his statute of limitations period ended.  Additionally, as to Colon's allegation that he was entitled

to equitable tolling due to his PCRA counsel's alleged ineffectiveness, Magistrate Judge Angell dismissed this argument because Colon's PCRA counsel had advised him on March 11, 1999 that his petition was clearly untimely and he was "at a loss" as to how to proceed.  But despite his PCRA counsel's advisement, Colon still failed to act in pursuing any claims in both state and federal court, and accordingly Magistrate Judge Angell found there was no basis for equitable tolling.

On April 30, 2007, Colon filed his objections to the Report and Recommendation.  In these objections, Colon exclusively argued that his PCRA counsel had "misrepresented" matters to him and that these misrepresentations resulted in his untimely filing.  Thus, Colon again alleged that he was entitled to equitable tolling.  On May 9, 2007, this Court approved and adopted the Report and Recommendation without further comment.  On September 10, 2007, the Third Circuit denied Colon's request for a certificate of appealability under 28 U.S.C. §2253(c)(1).

On May 28, 2013, the United States Supreme Court issued its ruling in McQuiggen v. Perkins, ⸺ U.S. ⸺, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), which held that "actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass" to overcome  "a procedural bar…[such as the] expiration of the statute of limitations." Id. at 1928. On October 8, 2013, Colon filed the instant Motion to Vacate Order Denying Habeas Corpus Relief in light of McQuiggin.  Colon claims that he has evidence which demonstrates that he is actually innocent of the crimes for which he was convicted, and therefore the Court should vacate its Order of dismissal of his petition as untimely and evaluate his claims on their merits.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief" from the judgment. Fed.R.Civ.P. 60(b)(6). Subsection (b)(6) is the only provision under which Colon brings his motion. A motion under subsection (b)(6) must be brought "within a reasonable time," Fed.R.Civ.P. 60(c)(1), and requires a showing of "extraordinary circumstances." Gonzalez v. Crosby, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005).  The Supreme Court has explained that "[s]uch circumstances will rarely occur in the habeas context." Gonzalez, 545 U.S. at 534.  Moreover, a change in decisional law after judgment is entered rarely justifies Rule 60(b)(6) relief. Id. at 536–38; see also Agostini v. Felton, 521 U.S. 203, 239, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."); 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2864 (3d ed. April 2013).

## III.     DISCUSSION

### A.  Second or Successive Habeas Petition

In evaluating a Rule 60(b) motion in the context of habeas review, the court must first determine whether the restriction on successive petitions applies. See Gonzalez, 545 U.S. at 529. If the Rule 60(b) motion is "in substance a habeas corpus application," it shall be treated as a successive habeas petition. Id. at 531; see also Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir.2004). In such a case, the district court does not have jurisdiction over the motion unless the petitioner is authorized by the court of appeals to file a successive petition. See Burton v. Stewart, 549 U.S. 147, 153, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007).  However, a Rule 60(b)

motion challenging "only the District Court's previous ruling on the AEDPA statute of limitations ... is not the equivalent of a successive habeas petition." Gonzalez, 545 U.S. at 535-36; see also Parham v. Klem, 496 F. App'x 181 (3d Cir.2012) (holding that the district court had jurisdiction over the petitioner's Rule 60(b) motion and that it was not a second or successive habeas petition because the court's consideration of "new" evidence of actual innocence "does not transform a gateway claim into the assertion of a federal basis for relief").

Here, Colon presents arguments regarding the propriety of the Court's application of the AEDPA statute of limitations in light of McQuiggin. These arguments attack the manner in which his habeas petition was dismissed, and thus the Court finds that Colon's Rule 60(b) motion is not a unauthorized successive habeas petition.

**B.  Rule 60(b) Motion**

McQuiggin served to clarify how the actual innocence gateway articulated in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) would apply in the event that a habeas petition was denied for expiration of the statute of limitations. Specifically, in McQuiggin the Supreme Court held that a "colorable" claim of actual innocence constitutes an equitable exception that can overcome the bar of the AEDPA one-year statute of limitations. 133 S.Ct. 1924. "Colorable," as that term has been used in the context of consideration whether a "miscarriage of justice" warrants excusing procedural defaults, means "reliable evidence of factual innocence." Schlup, 513 U.S. at 324. To establish a colorable claim of actual innocence, a petitioner must show, usually by way of new evidence, that it is more likely than not, that no reasonable jury would have convicted him. Id. at 327; see also Glass v. Vaughn, 65 F.3d 13, 16–17 (3d Cir.1995). This showing requires "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was

not presented at trial." <u>Schlup</u>, 513 U.S. at 324; <u>see also</u> <u>Cristim v. Brennan,</u> 281 F.3d 404, 420–21 (3d Cir.2002).

Additionally, <u>McQuiggin</u> makes clear the limitations on its holding and stresses the "demanding" nature of the test for permitting the gateway to open: "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" <u>Id.</u> at 1936 (quoting <u>Schlup</u>, 513 U.S. at 316). The Supreme Court further noted that the degree of diligence displayed by the petitioner in pursuing and presenting the new evidence "bears on the determination whether the petitioner has made the requisite showing [of actual innocence]." <u>Id.</u> at 1935.

In the present matter, the Court is not persuaded that Colon has made a credible showing of actual innocence.  The Court first notes that — as outlined, *supra*, in the Court's review of the procedural history of Colon's state and federal habeas claims — Colon has never before raised an argument of actual innocence before this Court or any other court.  A petitioner's lack of diligence in pursuing a claim of actual innocence undermines his assertion of innocence and "renders his case 'all the less extraordinary.'" <u>Turner v. Dragovich</u>, 163 F. App'x 97, 100 (3d Cir. 2006) (quoting <u>Gonzalez</u>, 545 U.S. at 537.)

Secondly, the Court finds that the "new" evidence Colon introduces to support his claim of actual innocence does not meet <u>Schlup</u>'s high actual innocence threshold.  The evidence in question is a handwritten affidavit reportedly signed by Robert Rosser and dated January 29, 2004. (Pet'r's Mot. to Vacate, Ex. A.)  In this affidavit, Rosser asserts that he "was one of the one's [sic] who threatened to burn down the house" but that he "never heard either [Luis Montilla or Colon] threaten to burn the house down." (<u>Id.</u> at 1.)  Rosser goes on to state that he

8

swore in an affidavit Montilla threatened to burn the house down because an unspecified detective or detectives "kept putting words in [his] mouth," and threatened him with violence if he did not "sign what they wrote." (<u>Id.</u>)  Similarly, Rosser claims he testified at trial  that "Luis got mad and threatened to burn the house down" because he was "coached" by the police and that the detective who brought him to court to testify threatened that he would be charged with the fire if he did not testify. (<u>Id.</u> at 1-2.)  Rosser then goes on to provide an account of why he wanted to burn the house down ("[he] got mad"), and provides the location of two gas stations in the vicinity of the house where someone could buy gasoline. (<u>Id.</u> at 2.)

It is unclear from Colon's Motion to Vacate and Reply in Opposition to Respondents' Response how Colon came to possess this affidavit.  Nonetheless, the Court notes that the substance of the affidavit, far from exonerating Colon, primarily serves to call into question Montilla's involvement in this crime.  Colon himself is mentioned only once in the affidavit, when Rosser claims that he never heard Colon threaten to burn down the house. (<u>Id.</u> at 1.)  This is hardly "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." <u>McQuiggin</u>, 133 S. Ct. at 1936 (quoting <u>Schlup</u>, 513 U.S. at 316).

More importantly, however, the affidavit is dated January 29, 2004.  Accordingly, this affidavit was written (and potentially came into Colon's possession) more than two years before Colon filed his federal habeas petition on May 30, 2006, and nearly a decade before Colon filed the instant Rule 60(b) motion.  While the <u>McQuiggin</u> Court held that a habeas petitioner asserting an actual innocence claim need not "prove diligence to cross a federal court's threshold," it also found timing to be "a factor relevant in evaluating the reliability of a petitioner's proof of innocence." <u>Id.</u> at  1935.  To that end, an "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing"

9

necessary to invoke the miscarriage of justice exception to AEDPA's statute of limitations.  Id.

Further, "[a] court may consider how the timing of the submission and the likely credibility of [a

petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence]." Id.

(quoting Schlup, 513 U.S. at 332) (alteration in original).

Here, Colon provides no explanation for his near decade of delay in presenting this

evidence.  On the contrary, Colon acknowledges the delay and instead contends he "had no

knowledge of" this affidavit and "did not know that his co-defendant, Luis Montilla, was

litigating his case in court." (Pet'r's Reply 3.)  From this argument, the Court gathers that Colon

is arguing he did not come to possess this evidence until after Montilla's own federal habeas case

had concluded.  There are several flaws, however, in Colon's reasoning.  As Colon is well aware,

although Colon and Montilla stood trial together their post-conviction relief efforts have

proceeded separately.  Nothing about the outcome or trajectory of Montilla's habeas efforts

relieves Colon from the duty of diligently and timely pursuing his own habeas claims.

Additionally, even if the Court were to accept that Colon did not know of the existence of

this evidence, the fact still remains that there is an unaccounted for delay in Colon presenting this

evidence.  Montilla filed his federal habeas petition on April 8, 2008.  Petition for a Writ of

Habeas Corpus and Consolidated Memorandum of Law, Montilla v. Beard et al, No. 08-1705-

HB (E.D. Pa. Apr. 8, 2008), ECF No. 1.  Proceedings in that matter concluded on December 22,

2008, when Montilla and the respondents in that matter entered into a stipulation that was

approved by the Honorable Harvey Bartle III. Stipulated Final Disposition, Montilla v. Beard et

al, No. 08-1705-HB (E.D. Pa. Apr. 8, 2008), ECF No. 21. Under the terms of the stipulation,

Montilla was resentenced from life in prison to an aggregate sentence of 28 ½ to 57 years in

prison.  Id.  Colon avers that he learned of the existence of the affidavit (or the information it

contains) at some unspecified time after December 22, 2008, when Montilla "shared the new evidence" with him.  By this measure, then, Colon knew of the existence of the affidavit as early as late December 2008; nonetheless, this Rule 60(b) motion still was not filed until October 8, 2013.  Thus, Plaintiff's assertion that he did not learn of the 2004 affidavit (or the information it contains) until after Montilla's federal habeas proceedings concluded *at most* only shortens the period of Colon's delay from a decade to several years.  This is insufficient for meeting the actual innocence threshold.[2]

Finally, even if the Court were to conclude the affidavit constitutes "new" evidence, the affidavit would still be insufficient evidence of actual innocence.  At most, the affidavit only calls into question Rosser's credibility as a witness at trial.[3]  It is well-established that impeachment evidence is inadequate to establish actual innocence. See Sawyer v. Whitley, 505 U.S. 333, 349, 112 S. Ct. 2514, 2524, 120 L. Ed. 2d 269 (1992) ("latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [a prosecution witness's account of petitioner's actions."); Hussmann v. Vaughn, 67 F. App'x 667, 668-69 (3d Cir. 2003) (actual innocence not established where two new affidavits would merely impeach credibility of Commonwealth witness); see also Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002),

---

[2] Colon also asserts the specious argument that the Court should excuse his delay in bringing this Rule 60(b) motion because, according to him, Respondents' Response in Opposition to his motion is untimely.  (See Pet'r's Reply 2) ("The Petitioner respectfully believe[s] that the law regarding court filings and statute of limitation[s] should go both ways.") Colon therefore asserts the Court should not consider Respondents' Response, and ultimately grant his motion.  However, Respondents' Response is not untimely.  Further, even if it were untimely, it would still be within this Court's discretion to consider Respondents' brief.  Conversely, the untimeliness of Colon's federal habeas petition and Rule 60(b) motion are governed by federal law.  It is not within the Court's discretion to simply disregard federal law.

[3] Respondents have also outlined several ways in which Rosser's testimony *during* the trial was inconsistent. (Resp't's Resp. Opp'n 7-9.) Respondents conclude that the jury convicted Colon even despite Rosser's inconsistencies because there was other credible evidence of Colon's guilt. (Id. 9.) Respondents, however, have not attached the trial transcripts to which they refer to their brief, and — given the amount of time that has elapsed — the Court is no longer in possession of the state court record.  Accordingly, the Court is not in a position to evaluate Respondents arguments.

cert. denied, 537 U.S. 1117, 123 S. Ct. 882, 154 L. Ed. 2d 795 (2003) ("[S]peculative and

collateral impeachment falls far short of showing actual innocence.)

Accordingly, the Court finds that Colon provides no credible cause to disturb the Court's

dismissal of his petition as time-barred.

## IV.    CONCLUSION

For the reasons set forth above, the Court denies Petitioner's Rule 60(b) motion.  An

appropriate order follows.